States v. Davis. Ms. Hayes. May it please the court, I'm Anne Hayes on behalf of the appellant Roderick Davis. Mr. Davis was convicted after a trial that was fatally flawed by error and he was sentenced on the basis of unreliable information. We reassert every argument that is presented in our briefs, but this morning I intend to focus on the district court's failure to dispel the jury's confusion about the role the CI could play in the conspiracy, the error in relying on questionable hearsay testimony in increasing Mr. Davis's sentence, and the prevalence of government misconduct at trial. The jury's verdict, guilty verdict, on the conspiracy charge count one must be vacated because the jury- Speaking for myself, I would be much appreciative if you left at least a moment to talk to me about the Feretta question. Yes, your honor. And of course, whenever you want me to talk about that. But I'd like to say that the jury verdict, the conspiracy charge must be vacated because the jury told the judge it needed help and the district court failed to take meaningful action to assist the jury. The actual text of the question was, as far as we know, it was reported by the judge. The note said, it was mentioned Mr. White was not considered a conspirator as he was working with the FBI because the substances presented in evidence were provided by Mr. White. Does this affect count one? So let me make sure I understand what you think should have happened. You think that a jury instruction should have been given, right? Yes, your honor. But there was no request for a jury instruction, isn't that right? Well, we've presented two arguments concerning this. First, that originally there should have been a jury instruction. But there wasn't a request for it, is that correct? Correct. And so the failure to give that sua sponte is something we review for plain error, right? That's correct. And my focus this morning, your honor, is what happened after the jury came back and said, we are confused about this, please help. And at that point, that triggered a responsibility on the part of the judge to clear up their confusion. But the judge did not do that. Instead, the judge simply referred over the defense objection, referred the jury back to the original instructions that did not address the role of the CI in the conspiracy. So the note that you just read, though, the district court did respond, did it not? Quote, the court has provided you with the instructions on the law to be followed, and all the evidence has been received. You are to rely on the law and consider the evidence. That's correct, your honor. However, this court has recognized that sometimes a jury instruction will trigger a need for additional explanation. And I would cite the court to U.S. v. Lopez, where the court said the district court has discretion to expand upon the initial instructions when a jury question arises. And this is one of those instances where the jury explained that the, established that the original instructions were not adequate to guide their deliberations, but the district court did nothing further and instead directed them back to those instructions. In terms of gauging harm, let's assume for purposes of the discussion that the district court should have provided a supplemental instruction when the jury came back with the question or the note. Given the agreement of both parties at closing argument that the informant could not be a co-conspirator, how do we assess the harm question, the prejudice question? The problem there is there were statements by the counsel saying that he could not be a co-conspirator and the jury recognized that, but the more authoritative figure, the judge, never told them that, even though there were opportunities, three opportunities where the judge may have done that. And by refusing, by declining to tell the jurors directly that this C.I. cannot be a conspirator, and so you cannot rely on his conduct in finding a conspiracy, it likely confused the jury even more because three times or twice the judge was, defense counsel asked the judge to say that, but the judge declined to say that. Let me read to you from the rebuttal, the government's argument. Yes. Defense counsel's right. He can't conspire with Mr. White. Mr. White was acting as an agent of the government. He is correct about that one, but it's clear from the common conversations, from common sense, et cetera. And then he goes on, and that's in response to the defense counsel's argument that emphasized repeatedly that, quote, Davis can't conspire with an agent of the United States. Could there have been any real doubt about that given that the prosecutor and the defense lawyer repeatedly told the jury that? The jury seems to have understood, it could, the jury may well have understood, but they certainly did not understand its impact on their deliberations. And at that point, the judge should have cleared that up. I'd like to move on to my sentencing issue. More than half of the drugs at, I'm sorry, Your Honor, and Fred, yes, sir. I'll be very brief on the sentencing. More than half of the drugs attributed to Mr. Davis for sentencing purposes were included under the theory of relevant conduct, and the sole source for that information was questionable double hearsay statements made by the informant, Mr. White. And there were no indicia of reliability for that hearsay testimony. First, it was double hearsay. The defendant, Mr. White, could not assess his credibility. Even the witness who testified about the statement apparently had not spoken directly to Mr. White, so there was no ability to assess his credibility. I take your point that the district court did not make any express reliability or credibility findings with regards to Mr. White, but it did buy, for lack of a better term, the agent's testimony on its face, the substance of it. What are we to make of that in terms of your arguments that the court should have done more, maybe couldn't have done more? I think what you should make of that is that the judge believed he credited the agent who testified, but that didn't operate to go two levels deeper and make a finding as to the reliability as to the original declarant. And so, yes, he credited, she credited the agent who testified as credible. I heard this from someone who heard it from him, but it did not act as a finding on the credibility or reliability of the declarant. Is it your view that the district judge had to actually say and make a distinct finding about the reliability of the hearsay statement at sentencing? Or was it enough that the reliability of the statement would otherwise be apparent from the four corners of the record? Either would work, your honor, but neither happened. The credibility was not apparent from the four corners of the record. Instead, he was shown to be a liar. He lied about, and I do want to get to the Feretta argument for you, but we laid out in our brief several instances where his credibility was tremendously undermined. Regarding the Feretta argument, your honor. It was not raised in the initial brief. It was first raised in the reply brief. That's correct. It was raised in a supplemental brief, not in the reply brief. The court gave permission to assert the argument in a supplemental brief. And so, what happened was Mr. Davis rather, before the sentencing hearing, filed a motion in which he asked for permission to represent himself. There was a hearing on two things. First, the attorney's motion to withdraw from the case and of Mr. Davis's desire to represent himself. The judge ruled on the withdrawal motion and found that the attorney had provided good representation, but he did not rule, did not question Mr. Davis and give him an opportunity to establish his right to represent himself and his ability to represent himself. The government says in a brief footnote that we shouldn't reach the issue at all because it wasn't raised in Davis's initial brief. Therefore, it was forfeited and no rare exception to the forfeiture rule properly applies here. Therefore, don't consider it. I'd like you to help me with that because I think the Fourette issue is a real one and a substantial one just speaking for myself, but I'm concerned that it wasn't raised in the initial brief. So help me with forfeiture here. Help you with forfeiture. Well, the absolute manifest injustice of not addressing the issue is what we would rely upon in this instance to overcome the forfeiture issue. I know this is a difficult burden to get past, but Mr. Davis expressed his desire after the original brief had been filed to his attorney to raise this issue and asked her to do that, and she did. I see my time is up. Thank you. Thank you, Ms. Hayes. Mr. Juman. Thank you, Your Honor, and may it please the Court, Robert Juman for the United States. With me at council table is Yara Dodin, who was the trial AOSA. I'd like to start where we just left off with that Fourette issue and address Judge Marcus's concern about abandonment. I do think it's relevant that this is the docket showed at the time of his initial appeal that he had filed this motion to proceed pro se. It showed that there had been a sealed hearing, so the issue was, you know, available if it had been an issue and if Mr. Davis had in fact sat through his sentencing chomping at the bit because he truly wanted to represent himself and had denied that opportunity and an attorney had been foisted upon him against his will, it's common sense to suggest he would have raised that with his appellate counsel in the first instance. So whether or not the Court views it as an abandonment issue, which we think it is, it still speaks to the question of whether or not he truly, clearly and unequivocally wanted to represent himself at sentencing. You don't have to make, putting the abandonment waiver issue aside, you don't have to make a demand a second time once that demand has been rebuffed, generally speaking. Well, Your Honor, this Court's jurisprudence has suggested otherwise. There's a Doremus case, which we cite in our brief, where the Court noted that a defendant failed to renew a request after the initial request, then proceeded to allow the defense attorney to represent him during the trial. So there is a notion. We're certainly not suggesting that a defendant has to, you know, tilt their windmills and once having been ruled against Well, you know, the Court says, we say in Dorman, that after a clear denial of a request, a defendant need not make repeated fruitless motions or forego cooperation with a defense counsel in order to preserve the issue on appeal. That's absolutely What more did he have to say than that which he did say, which is, I want to go it alone. I want to represent myself. And then his lawyer moved to be discharged, to withdraw. The judge recognized clearly that he had moved to proceed by himself under Ferretta. He cited Ferretta in his written motion. Then the judge had a colloquy briefly with him and said, what do you want to do? And he said, basically, I want to go it alone, but I'd like standby counsel, too. The judge said, I'm not giving you standby counsel, basically, if you want to go it alone. What do you want to do? And he said, I want to go alone. Could he have made his view any clearer? And if the answer is no, wasn't the district court obliged to conduct a Ferretta hearing at that point? Your Honor, we think that he certainly could have been clearer. And if I can go through that sealed transcript and explain why. Page six, the court's first question, do you want the court to appoint you a new attorney? Davis says, yes. That's not consistent with proceeding pro se. Right there, you've got an ambiguity. The court's second question, or did you want to represent yourself? Instead of saying yes, Davis says he wants standby counsel. And this court recognized in cross that there's no right to hybrid representation. And that's not the same as saying, I want to proceed by myself. So there again, not consistent with the request to proceed pro se. The court asks for clarification because there's this obvious ambiguity. Do you want me to appoint an attorney to represent you? He again says, I want standby counsel. So again, inconsistent with proceeding pro se. The one time on that transcript where he says, I want to represent myself, he says it only after the court gives him a binary choice, appoint another attorney or represent himself. And we agree with the words, we see the words, but those words have to be seen in the context of his prior three answers. They have to be seen in the context of his motion, which although it cites Ferretta, although it says proceed pro se at my sentencing, it mentions nothing about- The defendant, I would like to proceed pro se and have a standby counsel. Is that possible? Yes. District court. Well, sir, I would need to colloquy you to determine whether in fact you can represent yourself. So she recognizes right at the start that if he really wanted to go himself, she had to go through Ferretta and the district court goes on. And then I would make an independent decision whether the court would appoint standby counsel. So there's really not a middle ground for you. The question for you is number one, you've told the court that you want me to permit Mr. Donnelly to withdraw and that's the court's responsibility to determine whether that's appropriate. And then secondly, you need to let me know if you want me to appoint another attorney to represent you or you want to represent yourself, the defendant. I would like to represent myself, the court. All right. So at this point, let me give Mr. Donnelly, the defense lawyer, an opportunity to respond and then I'll inquire as to whether in fact it is appropriate to permit you to represent yourself. And then what happened is she went through a long colloquy with the defense lawyer, satisfied herself that he was competent and he agreed to go forward if the defendant was willing to work with him in the process. Did I get that right? Absolutely. Okay. I think on this point, and I don't think I need to belabor it, our point is that this is not a magic words test that this court has made clear over and over again that it's not just the defendant's words, it's his actions, it's the circumstances. This court did not reject out of hand or simply rule against Mr. Davis. It listened to Mr. Davis. It heard his concerns. It had Mr. Donnelly address his concerns and it found that Mr. Davis did not clearly and unequivocally want to represent himself despite it never made that finding. The court did not I mean, you can infer that the court never made that finding. That's fair, Judge. We would say the record shows To me from the excerpt that Judge Marcus read, it just seems like to me that it was just a very honest, simple mistake. The district judge thought she was going to proceed in two steps. She was going to find out whether or not the lawyer should be discharged. And that's turned out to be the case. Then she'd move on to the Ferretta inquiry. And one thing led to another and they never got to the Ferretta inquiry. Your Honor, I think that a fair reading of the record is it's a little more than that, that the court probed to find out what the issue was. Did Mr. Davis truly want to represent himself or was he lashing out at his attorney because he was upset about the conviction and having stated on the record that that's what his real concerns were. She also noted that he had talked to Mr. Donnelly about the sentencing. He had approved Mr. Donnelly putting in the objections to the PSI. He had approved Mr. Donnelly representing him at sentencing. You're absolutely right. The court did not make a formal finding. But the standard here is whether or not Mr. Davis had made a clear and unequivocal expression. And I take all those points, but I feel like given the time, it's also important to note that even if the court finds there was a clear and unequivocal expression, that can be waived. You know, this court has also made clear that the risks of representing yourself are so great. Right. The problem is the district court never got to that stage to counsel him, to dialogue with him, and to see having fully informed him whether he knowingly and voluntarily gave up his right to a lawyer and chose to go it alone. As foolish as that obviously would have been, the Supreme Court has made it crystal clear that's his right. And that's what troubles me because they've made it so clear that they say we only look we we don't even look at We're not and we're not suggesting it. But we are suggesting that the Supreme Court has equally said that once a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be within the defendant's acquiescence. That's McCaskill. And here, whatever you think about the conduct at the sealed hearing, and even if you don't think it's been abandoned, for Mr. Davis to prevail, the court would have to ignore all of Davis's actions after the sealed hearing. He, again, as in Doremus, he never again asks to represent himself. To the contrary, he has already approved, specifically, Mr. Donnelly's filing of the PSI objections. He acquiesces to Donnelly's participation in the sentencing hearing. He says nothing when Mr. Donnelly is introduced as his attorney. He lets Mr. Donnelly present all of the arguments. He doesn't ask to speak even when repeatedly invited by the court. He says nothing. And all of this is the same kind of conduct that the court recognized in McCaskill. And also, this court in Gill v. McCusker, I think, pointed to- I think I have your answer. But it would be helpful for me also to have you address the issues that Ms. Hayes really started with. Before you do that, though, I'd like to talk a bit about the forfeiture point. Yes. It is true that we've been pretty adamant about the need to raise issues in initial briefs. And that's because, otherwise, when it's raised in a reply brief, then the government, whoever is the appellee, has no opportunity to respond. But because we granted leave for supplemental briefs, there was an opportunity to respond, on your part. And there was a time, too, when we didn't permit supplemental briefs even on intervening Supreme Court precedent. And we were criticized about that by members of the Supreme Court. And we went on bonk and we changed our practice about that. And I just wonder whether this is similar in the sense that you've had your opportunity to respond in a supplemental brief, so the ordinary concern about failure to raise it in an initial brief is not as present as it ordinarily would be? Chief Judge Pryor, you're absolutely right. It is certainly possible to conclude from this Court's existing decision to allow supplemental briefing that this Court wasn't concerned about abandonment. And as you note, we put it in a footnote. Our point, I think, our broader point is simply it speaks to the question about whether or not Mr. Davis truly sat there during that sentencing frustrated because an attorney was being foisted upon him. And manifestly, that's not the case. You might want to go to those other issues. With respect to the other issues, I want to, I think, point out, I think, two fallacies in the appellant's argument regarding alleged confusion. First, let's look at what the note was actually asking. And recall that count one didn't just ask whether or not Mr. Davis was guilty of conspiracy. It also asked the jury to determine if the object of the conspiracy was 100 grams or more of heroin, 40 grams or more of fentanyl, or a detectable amount of crack. So the note, again, they acknowledged that Mr. White couldn't be a conspiracist. So what they were asking, in essence, was whether the substance Mr. White got, were those part of the conspiracy? And, of course, the simple answer is yes, they are part of the conspiracy. But the court didn't err by simply referring back to the standard instructions. The court's instruction was neutral. And we don't think there's any evidence that there's any jury confusion here. Again, the jury literally said in its note that it understood White couldn't be a co-conspirator. And when you look at cases like Sears and Lively, which the appellant- You said the- I may have misheard you, but you said that the amounts Mr. White was involved with after he became an informant count for the conspiracy in terms of guilt innocence? Count for purposes of- yeah, those were the only drugs that the jury was told about. You don't- but a drug conspiracy doesn't require actual physical drugs. You can conspire without having consummated the narcotics transaction. Yes, Judge. I'm sorry. What I meant is, in order to determine the subsequent- they had to answer also, what was the quantity involved? They were asked, was it more than 100 grams of heroin or not? Right. But I guess I'm confused. Okay. If you acknowledge that Mr. White could not, once he became an informant, could not conspire with Mr. Davis, right? Right. Okay. If that's true, whatever Mr. Davis provided to Mr. White could not be attributed for purposes of the conspiracy because he's dealing with someone who can't be a co-conspirator. He can be charged substantively with possession. He can be charged substantively with distribution. But those amounts are not narcotics amounts for the conspiracy if the other person on the other side of the agreement is a confidential informant. The evidence here was that Mr. Davis was obtaining those drugs from other people, people like Horn and Battle and Grissom and Mysis. And so he wasn't a conspiracy with all- this was a classic hub and spoke conspiracy. Right. But that's not the- I guess what you were- then maybe I'm not confused. What you're trying to say is that the amounts that Davis got from the others and then gave to White count because he conspired with the others.  But it's not necessarily what White ended up with. It's whatever the others gave Davis.  Okay. Got it. Okay. Let me ask you- Go ahead. Go ahead. Go ahead. If we were to rule that there was a Feretta violation, we would vacate the sentence, not the convictions, right? That's right. He only asked about coverage of sentencing.  One sentencing question for you before you sit down.  Generally, we don't require district judges to make express credibility, reliability findings at sentencing when there's hearsay. But this case had double hearsay. And so, you know, at some point, you do want the judge to say, okay, I recognize this is double hearsay. The agent didn't speak to White. Somebody else spoke to White and then transmitted White's information to this agent who's now testifying. I find the agent credible. I find White's testimony is reliable. His statements are reliable because they were corroborated by evidence at trial, whatever. What's your reaction to that? The way the court's described it, the judge in that case would be saying, I'm making a finding of credibility as to this hearsay declarant based on some other evidence. But another way to look at that, and I think what happened here, is the court didn't base its findings solely on the fact that White told the agent X, Y, Z. The court based its finding on the substance. There were phone calls between White and Davis, right? There were phone calls between White and Davis. Exactly. The substance of those calls. Law enforcement observed the interaction between them, right? Most importantly, the phone records showing that before White was a cooperator, every time he got drugs to sell to a confidential source, he was only calling Davis. He wasn't calling anybody else. So there was nobody else as a potential candidate to be a supplier. So your point is that even in the absence of an express finding, the record established reliability. It established reliability and it corroborated White's hearsay at the same time. I see my time is way over. Unless the court has any other questions, we rest on our papers. We've been on our time. Thank you, Mr. Juman. Ms. Hayes, you have five minutes. Thank you, Your Honor. I'll get right back to the Feretta issue and whether there was forfeiture. In this case, the application of the forfeiture doctrine would be unduly harsh, and here's the reason. In looking at the docket sheet from the district court concerning the hearing that was held that should have included the Feretta hearing, the docket sheet says only it's a paperless minute entry for proceedings held on a motion to withdraw as attorney by Paul Donnelly. So the docket sheet does not reflect that there was a hearing or there should have been a hearing on the Feretta matter. And so there's no issue apparent from the docket sheet. The public-facing transcript also only referred to the withdrawal motion. It did not indicate that there had been a Feretta hearing. Now, it would have been better to go back and look at the sealed- Well, I just wonder whether it matters much because I think the reason that we ordinarily don't entertain forfeited issues is because there's not an opportunity on the part of the appellee to respond. But we just don't have that problem here where there's been supplemental briefing by both sides. Exactly, Your Honor. Help me understand, though, which of the exceptions, which of the extraordinary circumstances that we outlined in Campbell and derived from access now actually apply here. Is it that the proper resolution is beyond doubt or is that it presents an issue of general importance or the party lacked the opportunity? We don't have that. The issue is not a question of pure law. Is it that the interest of substantial justice is at stake? Which of these issues, these exceptions do you think we ought to be focusing on? I think you should focus on the fact that the resolution is beyond doubt because it's clear that the judge did not do the Feretta hearing and there was an absolutely unambiguous request for self-representation. And it is an extraordinarily important issue because this is an important constitutional right that was denied Mr. Davis even though he asked to have it recognized. Potentially denied. I mean, because you could have the Feretta inquiry at the end of which he might say, oh, I think I'll continue with my lawyer. That's right, Your Honor. But he was absolutely entitled to have the Feretta inquiry. And that's a very serious loss for him to not have that opportunity. And as far as the argument that he abandoned it because he went on and he didn't complain again, well, I would say that once the judge said, you're stuck with this lawyer and you have to go forward, a layperson is not going to have the nuanced analysis of saying, well, but there actually were two issues and he only ruled on one. I mean, the judge didn't seem to recognize that. It's not fair to expect Mr. Davis to have parsed out that ruling and to have understood that he had not been denied his opportunity to represent himself. Regarding the jury verdict, it was all very confusing. There were two theories of how there – essentially two theories of how there might have been conspirators involved that were not Mr. Davis. And they were – Mr. White, rather. And they were confusing. Now counsel is suggesting that the evidence showed that these six people who had been named as potential conspirators were the people who were the sources for the drugs that were sold to the informant. There's absolutely nothing in the record to suggest that that's what happened. There was evidence, wasn't there, that these individuals were sources for Mr. Davis, right? No, for the most part they were identified as people who bought drugs from Mr. Davis. Only one of the people was identified as a potential source. And there's nothing that linked him to the events that were proven at trial. So the suggestion about there being sources was entirely unspecified, that he had to get the drugs from somewhere, essentially. But it never said where he got the drugs that were sold to Mr. White. With regard to those other individuals, does it matter whether Davis was the source or the recipient insofar as the conspiracy charges? No, and that's why we haven't challenged the sufficiency of the evidence, Your Honor. But it certainly, I'm just suggesting that it adds to the confusion where we don't know who the sources were for these drugs and so we're not really clear on what the theory the jury might have considered. And if the jury had thought that these other people were, evidence about these other people was sufficient to support the conspiracy conviction, they wouldn't have had to worry about Mr. White's role. But they were worried about Mr. White's role, and that's clear in this case. Regarding sentence ... I've got you, Ms. Hayes. Time's expired. Oh, I'm sorry. That's okay. I know you were court appointed and we very much appreciate you accepting the appointment and discharging your duty well this morning. Thank you, Your Honors. We're going to move to our second case.